UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| CHAD D. ENGELBY, | Case No. 17-CV-0296 (PJS/FLN) |
| Plaintiff, | |
| v. | ORDER |
| I.C. SYSTEM, INC., a Minnesota corporation, | |
| Defendant. | |

Michael J. Sheridan, ATLAS LAW FIRM, LLC, for plaintiff.

Sean P. Flynn, GORDON & REES LLP, for defendant.

Plaintiff Chad D. Engelby filed a petition for relief under Chapter 7 of the United States Bankruptcy Code. Among the debts that he sought to have discharged was a debt to Molldrem Family Dentistry ("Molldrem"). After Engelby filed his petition, Molldrem hired defendant I.C. System, Inc. ("ICS") to collect Engelby's debt. ICS sent three letters to Engelby—two while his bankruptcy proceedings were pending and one after his debt to Molldrem had been discharged by the bankruptcy court.

Engelby brings this action against ICS, alleging that each of ICS's letters violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* This matter is before the Court on ICS's motion to dismiss Engelby's amended complaint. ECF No. 24. ICS argues that it cannot be held liable under the FDCPA because it did not *know* that Engelby had filed for bankruptcy or that his debt had been discharged. ICS further

argues that Engelby is judicially estopped from pursuing his FDCPA claims because he did not disclose those claims during the bankruptcy proceedings. For the reasons that follow, the Court finds that both of ICS's arguments are meritless, and therefore denies ICS's motion to dismiss.

I. BACKGROUND

Engelby became indebted to Molldrem in the amount of $825.60. ECF No. 16, Am. Compl. ("Compl.") ¶ 6. On April 21, 2016, Engelby filed a Chapter 7 petition in the United States Bankruptcy Court for the District of Minnesota. *Id.* ¶ 8. Engelby identified Molldrem as one of his creditors. *Id.* ¶ 9; *see also* ECF No. 26, Flynn Decl. Ex. 1, Bankr. Pet., Sched. F (listing a debt of $826.00 to Molldrem on account 4500). Three days later, the clerk of the bankruptcy court mailed a Notice of Chapter 7 Bankruptcy Case to Molldrem (and Engelby's other creditors). Compl. Ex. A. That notice informed Molldrem that "[t]he filing of the case imposed an automatic stay against most collection activities." *Id.* The notice specifically warned Molldrem that it could not "try to collect from [Engelby]" or "demand repayment from [him] by mail, phone, or otherwise." *Id.*

In July 2016, Molldrem hired ICS to collect the debt from Engelby. *Id.* ¶ 7; *see also* ECF No. 25 at 2. Molldrem apparently did not inform ICS that Engelby had filed for bankruptcy or that the automatic stay barred collection activities against him. ICS

sent letters to Engelby on July 9, 2016, and July 29, 2016, both demanding that he repay his debt to Molldrem. Compl. ¶ 12; *see also id.* Ex. B. Engelby did not respond.

The bankruptcy court issued an Order for Discharge on August 11, 2016. *Id.* ¶ 14; *see also* Flynn Decl. Ex. 3. On August 12, 2016, ICS sent Engelby yet another letter demanding that he repay his debt to Molldrem. Compl. ¶ 15; *see also id.* Ex. C. Of course, that debt no longer existed, as it had been discharged the previous day by the bankruptcy court. But ICS was apparently unaware of that fact.

Engelby brings this action against ICS, alleging that ICS violated multiple provisions of the FDCPA when it sent demand letters to him on July 9, July 29, and August 12, 2016. ICS now moves to dismiss Engelby's amended complaint for failure to state a claim.

## II. ANALYSIS

### *A. Standard of Review*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Id.* at 555. In assessing the sufficiency of the complaint, the Court may disregard legal conclusions that are couched as factual allegations. *See Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678-79 (2009). The Court must, however, accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See id.* at 678.

Ordinarily, if the parties present, and the Court considers, matters outside of the pleadings, the motion must be treated as a motion for summary judgment. Fed. R. Civ. P. 12(d). But the Court may consider materials that are necessarily embraced by the complaint, as well as any exhibits attached to the complaint, without converting the motion into one for summary judgment. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003); *see also Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003) ("'When deciding a motion to dismiss, a court may consider the complaint and documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.'") (citation omitted).

*B. FDCPA Claims*

Engelby alleges that ICS violated the FDCPA when it sent collection letters to him on July 9, July 29, and August 12, 2016. Engelby relies on multiple provisions of the FDCPA, but only one of those provisions needs to be discussed, because the Court must deny ICS's motion if Engelby has pleaded a plausible claim under any provision of the FDCPA.

Under the FDCPA, a "debt collector" may not "use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.[1]  The FDCPA sets forth a non-exclusive list of acts that violate this provision, including the making of a "false representation of the character, amount, or legal status of any debt."  15 U.S.C. § 1692e(2)(A).

Each of the three letters sent to Engelby by ICS asserted that Engelby's debt to Molldrem was due, and each of the letters demanded that Engelby repay that debt.  But at the time of the July 9 and July 29 letters, Engelby's debt to Molldrem was not due because of the automatic stay.  And at the time of the August 12 letter, Engelby's debt to Molldrem was not due because that debt had been discharged by the bankruptcy court.  It seems clear, then, that the three letters misrepresented the legal status of Engelby's debt to Molldrem in violation of § 1692e(2)(A).  *See Randolph v. IMBS, Inc.*, 368 F.3d 726, 728 (7th Cir. 2004) ("[A] demand for immediate payment while a debtor is in bankruptcy (or after the debt's discharge) is 'false' in the sense that it asserts that money is due, although, because of the . . . discharge injunction, it is not." (internal citations omitted)); *Eide v. Colltech, Inc.*, 987 F. Supp. 2d 951, 962-63 (D. Minn. 2013) ("Sending a collection letter indicating that a certain debt is due and payable when the debt has

---

[1] ICS does not dispute that it is a "debt collector."  *See* 15 U.S.C. § 1692a(6).  Nor does ICS dispute that Engelby owed a "debt" to Molldrem.  *See* 15 U.S.C. § 1692a(5).

actually been discharged in bankruptcy constitutes a false representation about the legal status of the debt, and is a violation of the FDCPA under the plain language of the statute.").

ICS does not dispute that its letters mischaracterized the legal status of Engelby's debt. ICS argues, however, that it nevertheless cannot be held liable under the FDCPA for two reasons. First, ICS argues that it cannot be held liable under the FDCPA because at the time that it sent the letters it did not know that Engelby had filed for bankruptcy or that his debt had been discharged. Second, ICS argues that Engelby is judicially estopped from pursuing his FDCPA claims because he did not disclose those claims during the Chapter 7 proceedings. The Court will address each defense in turn.

1. Lack of Notice

ICS asserts—and Engelby does not dispute—that ICS was not aware of Engelby's bankruptcy proceedings, and thus ICS was not aware of the automatic stay or the eventual discharge of Engelby's debt to Molldrem. ICS further argues that "[d]ue to the lack of notice of the bankruptcy and discharge, ICS could not have willfully and knowingly violated the automatic stay and discharge injunction by communicating with Plaintiff and therefore did not violate the FDCPA." ECF No. 25 at 2. The Court disagrees.

Engelby could have sued ICS under the Bankruptcy Code for violating the automatic stay and could have sought to hold ICS in contempt of court for attempting to collect a discharged debt. *See* 11 U.S.C. § 362(a)(6) (the filing of a bankruptcy petition operates as a stay on "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case"); 11 U.S.C. § 524(a)(2) (a discharge of a debt in a bankruptcy proceeding "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor"). Had Engelby done so, Engelby could not have collected damages unless he was able to prove that ICS acted willfully. *See* 11 U.S.C. § 362(k)(1) (providing damages to "an individual injured by any willful violation of a [bankruptcy-related] stay"); *In re Emmons*, 349 B.R. 780, 793 (Bankr. W.D. Mo. 2006) ("[W]illful violations of the discharge injunction are punishable by contempt. . . . A creditor found in contempt for having willfully violated the discharge injunction is subject to an award of actual damages including attorneys fees."). Thus, ICS's lack of knowledge of the bankruptcy proceedings would have been a defense to an action under the Bankruptcy Code.

But Engelby has not sued ICS *under the Bankruptcy Code*. Instead, he has sued Engelby *under the FDCPA*. Section 1692e(2)(A) is a strict-liability provision. To recover under § 1692e(2)(A), a plaintiff need establish only that the defendant made a "false

representation of the character, amount, or legal status of any debt." A plaintiff is not required to prove that the defendant *knew* that the representation was false. *See Randolph*, 368 F.3d at 730 ("§ 1692e(2)(A) creates a strict-liability rule. Debt collectors may not make false claims, period."); *see also Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1176 (9th Cir. 2006); *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 36 (2d Cir. 1996).

This principle is applied in *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991 (7th Cir. 2003), a case that closely resembles this one. In *Turner*, the plaintiff sued a debt collector under § 1692e for attempting to collect a debt that had been discharged in bankruptcy. The debt collector (J.V.D.B.) argued—as ICS argues here—that the debt collector could not be held liable under § 1692e because it was not aware that the plaintiff's debt had been discharged. The district court agreed with the debt collector, but the Seventh Circuit reversed:

> Although J.V.D.B. was unaware of the bankruptcy, under § 1692e ignorance is no excuse. This circuit has held that "§ 1692e applies even when a false representation was unintentional." *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000) (citing *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996) (because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages)). Moreover, our test for determining whether a debt collector violated § 1692e is objective, turning not on the question of what the debt collector knew but on whether the debt collector's communication would deceive or mislead an

> unsophisticated, but reasonable, consumer. . . . Regarding
> § 1692e, then, it was legal error for the district court to treat
> J.V.D.B.'s lack of knowledge as determinative and to grant
> summary judgment on that basis.

330 F.3d at 995 (some internal citations omitted). Thus, ICS can be held liable to Engelby under § 1692e(2)(A) regardless of whether it knew that it was making false representations.[2]

All may not be lost for ICS, however. ICS will not be held liable to Engelby if it can "show[] by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k. At this point, though, ICS has neither pleaded nor attempted to establish a bona fide error defense.[3]

---

[2]There is a split in the circuits regarding whether 11 U.S.C. § 362 (which requires a showing of willfulness) and 15 U.S.C. § 1692e (which does not) are in conflict, such that the Bankruptcy Code should be deemed to have displaced the FDCPA. *Compare Randolph*, 368 F.3d at 730-32 (finding no implied repeal of the FDCPA), *with Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 504 (9th Cir. 2002) (finding such a repeal). Although the Eighth Circuit has not addressed the issue, this Court—and, as far as this Court can determine, the other district courts in the Eighth Circuit that have addressed the issue—have agreed with *Randolph* that the Bankruptcy Code does not work an implied repeal of the FDCPA. *See, e.g.*, *Drnavich v. Cavalry Portfolio Serv., LLC*, No. 05-CV-1022 (PAM/RLE), 2005 WL 2406030, at *2 (D. Minn. Sept. 29, 2005) ("This Court finds most persuasive the detailed analysis and thorough reasoning of the Seventh Circuit in *Randolph*. The Court agrees that the Bankruptcy Code and the FDCPA do not irreconcilably conflict with each other so as to repeal the FDCPA by implication.").

[3]ICS argues in its reply brief that § 1692e(2)(A) establishes liability only for
(continued...)

2. Judicial Estoppel

ICS also argues that Engelby is judicially estopped from pursuing his FDCPA claims. ICS argues that Engelby had an affirmative duty to disclose all assets—including contingent and unliquidated claims—in the bankruptcy proceedings. ICS further argues that, because Engelby received the July 9 and July 29 letters while the bankruptcy proceedings were pending, Engelby had a duty to disclose his FDCPA claims related to those letters.[4] ICS concludes that, because Engelby did not disclose any potential FDCPA claims to the bankruptcy court, "under the principle of judicial

---

[3](...continued)
material misrepresentations and that its misrepresentations were not material because Engelby could have consulted with the trustee and the trustee would have told him that his debt to Molldrem was not due. ECF No. 30 at 3-5. ICS's argument is not properly before the Court, however, because it was made for the first time in a reply brief. *See Torspo Hockey Int'l, Inc. v. Kor Hockey Ltd.*, 491 F. Supp. 2d 871, 878 (D. Minn. 2007) ("[F]ederal courts do not, as a rule, entertain arguments made by a party for the first time in a reply brief[.]"); *see also Smith v. United States*, 256 F. App'x 850, 852 (8th Cir. 2007) ("[T]he district court did not err in dismissing claims raised for the first time in a . . . reply brief."); *Navarijo-Barrios v. Ashcroft*, 322 F.3d 561, 564 n.1 (8th Cir. 2003) ("It is well settled that we do not consider arguments raised for the first time in a reply brief."). That said, the Court doubts that the materiality of a misrepresentation depends on whether the debtor can consult a third party about the accuracy of the statement. If that were the case, a misrepresentation would almost never be material, because a debtor can almost always consult a third party (such as a lawyer).

[4]ICS does not have a coherent judicial-estoppel theory with respect to the August 12 letter, which was not sent until after the bankruptcy proceedings were terminated.

estoppel, Plaintiff waived his right to bring these claims post-bankruptcy in the District Court." ECF No. 25 at 7.[5] Again, the Court disagrees.

Engelby filed for bankruptcy protection under Chapter 7. The Bankruptcy Code is clear that, in both Chapter 7 and Chapter 13 proceedings, the estate initially consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Likewise, in both Chapter 7 and Chapter 13 proceedings, the estate also includes "[a]ny interest in property that the *estate* acquires after the commencement of the case." 11 U.S.C. § 541(a)(7) (emphasis added). But only in Chapter 13 cases—and not in Chapter 7 cases—does the estate include "property . . . that the *debtor* acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7[.]" 11 U.S.C. § 1306(a)(1) (emphasis added). All of this was recently and succinctly explained by the Fifth Circuit:

> Chapter 13 is a "wholly voluntary alternative to Chapter 7,"
> which permits a debtor "to retain his property if he
> proposes, and gains court confirmation of, a plan to repay
> his debts." [*Harris v. Viegelahn*, 135 S. Ct. 1829, 1835 (2015).]

---

[5]As this sentence reflects, ICS often conflates distinct legal concepts. Sometimes ICS argues that Engelby is judicially estopped from pursuing his FDCPA claims. Other times ICS argues that Engelby waived his FDCPA claims. And other times ICS argues that Engelby does not have standing to bring his FDCPA claims. These are distinct legal doctrines, but they are often blurred together by ICS, as in the sentence quoted above. It does not matter, though, as ICS cannot successfully resort to any of these doctrines given the Court's holding that Engelby's FDCPA claims were not part of the estate and that Engelby had no duty to disclose them.

> By filing under Chapter 13, the debtor agrees that the property he acquires after filing for bankruptcy will become property of the bankruptcy estate under § 1306(a)(1). *Id.* On the other hand, "Chapter 7 allows a debtor to make a clean break from his financial past." *Harris*, 135 S.[ ]Ct. at 1835. A Chapter 7 debtor "is able to make a 'fresh start' by shielding from creditors his postpetition earnings and acquisitions." *Id.* It follows logically that a new property interest the debtor acquires after filing for bankruptcy becomes part of the estate in a Chapter 13 case but does not become part of the estate in a Chapter 7 case . . . .

*In re Hawk*, 871 F.3d 287, 295-96 (5th Cir. 2017).

Engleby's FDCPA claims against ICS were clearly not part of the bankruptcy estate. Engelby filed for bankruptcy on April 21, 2016. ICS was not hired by Molldrem —and ICS did not violate the FDCPA by sending letters to Engelby—until three months later. Clearly, then, Engelby's FDCPA claims did not exist "as of the commencement of the case." 11 U.S.C. § 541(a)(1). Moreover, because Engelby filed for Chapter 7 bankruptcy (not Chapter 13 bankruptcy), and because the right to sue ICS for violating Engelby's rights was an interest that Engelby (not the estate) acquired, Engelby's FDCPA claims did not later become a part of the estate.

ICS nevertheless argues that Engelby's FDCPA claims should be considered part of the estate because they are "sufficiently rooted in the pre-bankruptcy past." ECF No. 36 at 3 (quoting *Segal v. Rochelle*, 382 U.S. 375, 379-380 (1996)). ICS relies primarily on *In re Wisconsin Barge Lines, Inc.*, 91 B.R. 65 (Bankr. E.D. Mo. 1988). In that case, the

corporate debtors filed for Chapter 11 bankruptcy. While the bankruptcy proceedings were pending, the debtors were charged with violating federal environmental laws. The debtors pleaded guilty and were fined. Those fines were deemed to be claims against the debtors. A dispute then arose over whether the indebtedness created by those claims was dischargeable—and that, in turn, depended in part on whether the claims had been made pre-petition or post-petition. The bankruptcy court found that "the fines imposed upon the Debtors are pre-petition claims because the conduct giving rise to these claims occurred before the filing of the bankruptcy petition." *Id.* at 68.

On the basis of *Wisconsin Barge*, ICS argues that Engleby's FDCPA claims should be considered part of the bankruptcy estate:

> Here, even though the injury arguably accrued post-petition, the claim is sufficiently rooted in Plaintiff's pre-bankruptcy past to make the FDCPA claims property of the bankruptcy estate. Specifically, the debt that ICS was seeking to collect was incurred by Plaintiff pre-petition. The creditor-debtor relationship was established pre-petition. Similar to the scenario in *Wisconsin Barge*, *supra*, the alleged injury was not quantified until after the bankruptcy filing when the letters were sent. However, as the court held in *Wisconsin Barge* held [sic], the fact that the claim was quantified post-petition, does not make Plaintiff's FDCPA claim a post-petition claim because the claim was sufficiently rooted in Plaintiff's pre bankruptcy past because that was when the creditor-debtor relationship was created.

ECF No. 36 at 4. Therefore, ICS reasons, Engelby was legally obligated to disclose his claims, and because he did not, he is now judicially estopped from pursuing them.

The flaws in ICS's argument are readily apparent. As ICS itself recognizes, "'[a] claim is considered to arise, for bankruptcy purposes, at the time when acts giving rise to the alleged liability were performed.'" *Id.* at 3 (quoting *In re Transp. Sys. Int'l*, 110 B.R. 888, 894 (D. Minn. 1990)). In *Wisconsin Barge*, the "acts giving rise to the alleged liability"—that is, the violations of the environmental laws—occurred before the bankruptcy petition was filed. Here, the "acts giving rise to the alleged liability"—that is, ICS's violations of the FDCPA—occurred after Engelby's bankruptcy petition was filed. This is not a case in which an unlawful act occurs prior to the filing of a petition, but no injury occurs—or no injury is "quantified"—until after the filing of the petition. Instead, this is a case in which the unlawful acts themselves did not occur until after the filing of the petition. Indeed, one of the unlawful acts—the mailing of the August 12 letter—did not occur until after the bankruptcy proceedings were *concluded*. (It is a measure of the implausibility of ICS's position that ICS would define as part of the bankruptcy estate a cause of action arising out of an unlawful act that occurred after the bankruptcy proceedings terminated.)

ICS was not a creditor of Engelby's. Engelby had no relationship whatsoever with ICS until, three months after Engelby filed for bankruptcy, Molldrem hired ICS to collect Engelby's debt. Hence, at the time that Engelby filed his bankruptcy petition, Engelby had no claims against ICS—not even "future, non-possessory, contingent,

speculative, [or] derivative claims[.]" ECF No. 36 at 3. Not until three months later, when ICS violated the FDCPA by mailing letters that misrepresented the status of Engelby's debt, did Engelby have a claim against ICS.

In short, Engleby's FDCPA claims against ICS are analytically indistinguishable from claims that he would have against, say, a negligent driver who injured him in a car accident that occurred after the petition was filed, or an employer who failed to pay him for hours worked after the petition was filed. None of these claims would be part of the estate, nothing would require Engelby to disclose them, and nothing would preclude Engelby from pursuing them now. *Cf. In re Klein-Swanson*, 488 B.R. 628, 633 (B.A.P. 8th Cir. 2013) (finding that post-petition bonuses received by a debtor in recognition of pre-petition services were not "sufficiently rooted" in the pre-bankruptcy past because at the time of the filing of the Chapter 7 petition the debtor had no legal right to the discretionary bonuses).

One of the cases cited by ICS is instructive. In *Ortega v. Bel Fuse, Inc.*, 546 B.R. 468 (S.D. Fla. 2016), a debtor filed a Chapter 7 petition and then filed a lawsuit against his employer to collect wages due under the Fair Labor Standards Act ("FLSA"). In his complaint, the debtor sought wages related both to work done pre-petition and to work done post-petition. The parties agreed that the pre-petition claims should be dismissed "as the bankruptcy trustee from [the debtor's] Chapter 7 proceeding is the only party

with standing to bring those claims." *Id.* at 470. With respect to the post-petition claims, however, the court held that the debtor was not judicially estopped from asserting his claims:

> [U]nlike a case filed under Chapter 11 or 13, the Chapter 7 debtor retains possession of property—or legal claims—acquired after he files his bankruptcy petition.
>
> . . . [T]he incidents giving rise to [the debtor's] claims occurred partially before and partially after the filing of his petition. The incidents that occurred after [the debtor] filed his petition are not sufficiently "rooted in the pre-bankruptcy past" because . . . a discrete FLSA cause of action is created each time an employer issues a paycheck that fails to pay overtime compensation.

*Id.* at 470, 472 ("[E]very paycheck issued to [the debtor] after he filed for bankruptcy . . . created a distinct post-petition FLSA cause of action which cannot be included in [the debtor's] Chapter 7 bankruptcy estate."). Likewise here, a discrete cause of action under the FDCPA arises each time a debt collector makes a false representation regarding the legal status of a debt.

Finally, the Court disagrees with *Abuan v. JPMorgan Chase & Co.*, No. 13-CV-1315 L(JMA), 2013 WL 5522221 (S.D. Cal. Oct. 3, 2013), on which ICS heavily relies. The *Abuan* court held that a debtor was judicially estopped from pursuing claims under the Telephone Consumer Protection Act and other statutes against a creditor who had unlawfully attempted to collect its debt after the debtor filed for Chapter 7 bankruptcy.

The case is distinguishable; there, the debtor and creditor had a relationship that began before the bankruptcy petition was filed, whereas here Engelby and ICS had no such relationship. But the case is also unpersuasive.

*Abuan* relied primarily on *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778 (9th Cir. 2001), a decision about the failure of a debtor to disclose a contingent claim that he possessed *at the time that he filed for bankruptcy*. As described above, however, the Bankruptcy Code treats such a claim differently than a claim that arises after a debtor files for bankruptcy. When the debtor pointed this out, the *Abuan* court did not respond by engaging in statutory analysis or parsing the many judicial decisions supporting the debtor's position. Instead, the *Abuan* court simply said (with virtually no explanation) that allowing the debtor to pursue her claim would undermine the integrity of the bankruptcy system. *Abuan*, 2013 WL 5522221, at *3.

This Court respectfully suggests that it is the *Abuan* decision that undermines the bankruptcy system. As the Supreme Court has explained:

> Chapter 7 allows a debtor to make a clean break from his financial past, but at a steep price: prompt liquidation of the debtor's assets. . . . Crucially, however, a Chapter 7 estate does not include the wages a debtor earns or the assets he acquires after the bankruptcy filing. § 541(a)(1). Thus, while a Chapter 7 debtor must forfeit virtually all his prepetition property, he is able to make a "fresh start" *by shielding from creditors his postpetition earnings and acquisitions*.

*Harris*, 135 S. Ct. at 1835 (emphasis added). It is difficult to understand how a Chapter 7 debtor's failure to disclose a cause of action that he acquires *after* filing for bankruptcy could threaten the integrity of a system that is intended to give him "a 'fresh start' by shielding from creditors his postpetition . . . acquisitions." *Id.*[6]

\* \* \* \* \*

In sum, the Court finds that Engelby has pleaded plausible claims that ICS violated § 1692e(2)(A) of the FDCPA when it sent collection letters to him on July 9, July 29, and August 12, 2016. The Court further finds that Engelby's FDCPA claims were not part of the bankruptcy estate, that Engelby had no duty to disclose those claims, and that Engelby is not foreclosed from pursuing those claims in this action. ICS's motion to dismiss is therefore denied.

---

[6]The *Abuan* court also did not mention the practical consequences of its holding. If a debtor in a Chapter 7 proceeding must disclose every asset that comes into his possession post-petition, then the debtor would have to amend his schedule any time that he received a paycheck or a gift.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT defendant's motion to dismiss [ECF No. 24] is

DENIED.

Dated: March 27, 2018     s/Patrick J. Schiltz
                          Patrick J. Schiltz
                          United States District Judge